**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARVIN BELSER,

    *Plaintiff,*

*v.*                       CASE NO. 2:14-CV-13848-LPZ-PTM

SARAH ALTON, *RN,* SUSAN B.    DISTRICT JUDGE ARTHUR J. TARNOW
McCAULEY, *Health Care Unit*    MAGISTRATE JUDGE PATRICIA T. MORRIS
*Manager*, JOSH BUSKIRK, *Physician*
*Assistant*, MICHAEL BROSTOSKI,
*Doctor*, MELISSA LAPLAUNT, *HUM*,
WILIAM BORGERDING, *Assistant Chief*
*Medical Officer*, M. GRABOWSKI, *SRF*,
O.T. WINN, *Warden*, D. RICUMSTRICT,
*Deputy Warden*, ZUMMER, *RUM*, and
McCLEAN, *ARUS*,

    *Defendants*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the reasons stated below, I recommend that:

1. Defendants' motion to dismiss or for summary judgment (Doc. 29) be **GRANTED**,

2. Plaintiff's claims against non-moving Defendants Josh Buskirk and Michael Brostoski be **DISMISSED**,

3. Plaintiff's motions for preliminary injunction (Docs. 19, 33) and for appointment of counsel (Docs. 18, 34) be **DENIED**, and

4.  Defendant Josh Buskirk's Motion to Compel (Doc. 37) be **DENIED** as moot.

II.   **REPORT**

A.   **Introduction and Procedural History**

This case was referred to Magistrate Judge Patricia T. Morris, *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3), for resolution of all pretrial matters, on January 26, 2015. (Doc. 31.) Plaintiff is a *pro se* prisoner currently incarcerated at Marquette Brach Prison in Marquette, Michigan. The events that gave rise to the allegations in the Complaint occurred while Plaintiff was incarcerated at the Saginaw Correctional Facility ("SRF"), in Saginaw, Michigan, and the Chippewa Correctional Facility ("URF") in Kincheloe, Michigan.

Plaintiff's complaint does not organize his claims, but they fall into two basic categories: (1) Defendants' failure to provide an air mattress, velcro shoes, and physical therapy, as stated in grievance SRF-2012-10-1890-12I, including medical malpractice and negligence, and (2) defendants' threats that if Plaintiff did not sign off on the above grievance, he would be "sent up north" to a prison in Michigan's upper peninsula, and these threats materialized when Plaintiff was transferred to the northern prison.

Plaintiff seeks to "[h]ave all of [his] medical special accommodations returned, [and to see] . . . a medical assistant." (Doc. 1 at ID 5.) Plaintiff also seeks the maximum "amount allowed by the courts, court costs and attorneys fees and filing fees." (Doc. 1 at ID 8.)

 On December 22, 2104, 2014, Defendants Sarah Alton, Susan McCauley, Melissa LaPlaunt, William Borgerding, Melissa Grabowski, O'Bell Thomas Winn, Donald

Ricumstrict, James Zummer, and Todd McLean moved to dismiss or for summary judgment. (Doc. 29.) Plaintiff responded on February 23, 2015. (Doc. 36.) Plaintiff also filed two motions for appointment of counsel (Docs. 18, 34) and two motions for preliminary injunction and/or protective order. (Docs. 19, 33.)

In the motion to dismiss or for summary judgment, defendants contend that Plaintiff's complaint should be dismissed because Plaintiff failed to exhaust administrative remedies, failed to state a claim upon which relief can be granted, failed to allege the personal involvement of several defendants, and because state officials sued in their official capacity are entitled to Eleventh Amendment immunity. Based on my recommendation that summary judgment should be granted on the merits of the claims, I do not reach defendants' arguments regarding personal involvement or Eleventh Amendment immunity. Also, the analysis below applies to the claims against non-moving defendants Josh Buskirk and Michael Brostoski. Consequently, I recommend dismissing the claims against them.

Accordingly, these five motions are ready for report and recommendation without oral argument under Local Rule 7.1.

**B.      Defendants' Motion for Summary Judgment (Doc. 29)**

Defendants contend that Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies, for lack of allegations of personal involvement as to Defendants Borgerding, LaPlaunt, Alton, Grabowski and McLean, and based on Eleventh Amendment immunity for state officials sued in their official capacities. (Doc. 29.)

**1.      Exhaustion**

### a.    Standards

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] cases [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement.

Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id.* at 90. Complaints and appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies– specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining

5

whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.* However, the current MDOC policy requires this level of specificity.

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.*

###### b.   *MDOC policy*

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control . . . ." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B),(FF),(GG).

*Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### c.      *Analysis and Conclusions*

Here, Plaintiff filed six grievances through Step III while incarcerated at SRF and URF. (Doc. 29 at ID 106, Ex. B.) Five of those grievances (all beginning at SRF) were still pending when Plaintiff filed his complaint; therefore, none of these grievances were properly exhausted at the time the Complaint was filed. *Woodford*, 548 U.S. at 94-95; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (holding that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").

7

Plaintiff has alleged that he requested Step II forms from Defendant McLean but that she did respond to his request. It is unclear what topics and which defendants, if any, these grievances addressed. (Doc. 35 at ID 184, 187.) Construing the facts in favor of the non-moving party, it is possible that these grievances, for which Plaintiff requested but was not given Step II forms, addressed the topics alleged in the complaint. If this were so, and if Defendant Mclean were the grievance coordinator, it is arguable that Plaintiff's failure to reach Step II, despite his efforts to do so, could not be used against him and he could not be faulted for failure to exhaust. *Peterson v. Cooper*, 463 F. App'x 528, 530 (6th Cir. 2012) (holding that after *Jones v. Bock*, prisoner does not have to show that he requested the grievance form from every possible source, all he need show is that he requested the form from the grievance coordinator to exhaust). However, Defendant McLean is the Assistant Resident Unit Supervisor ("ARUS") and not the grievance coordinator. Since Plaintiff did not request the Step II forms from the grievance coordinator, as required by prison policy, it appears that he did not properly exhaust any claims other than those stated in the sixth grievance, SRF-12-10-1890-12i. Since the sixth grievance, SRF-12-10-1890-12i, was pursued through Step III, Plaintiff properly exhausted this grievance.

Even if Plaintiff had exhausted his remedies as to all the claims raised in his complaint, I suggest that the result would be the same.

### 2.      Merits of the claims

A civil rights action under 42 U.S.C. § 1983 consists of two elements: (1) The defendant acted under color of state law; and (2) the offending conduct deprived the

8

plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).

The "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The inquiry incorporates objective and subjective elements in a two-pronged standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry is whether the deprivation was "sufficiently serious" and the subjective prong considers whether the state of mind of the official was sufficiently culpable. *Id.*

The Sixth Circuit distinguishes between allegations of complete denial of medical care and inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976). "'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Brock*

9

*v. Crall*, 8 F. App'x 439, 440-41 (6th Cir. 2001) (quoting *Westlake*, 537 F.2d at 860, n.5). A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004).

### a.   *Wheelchair, air mattress, Velcro shoes, and toenail clipping*

In the sixth grievance, which was properly exhausted through Step III, SRF-12-10-1890-12i, Plaintiff asked to return his "broken" and "small" wheelchair, for a replacement air mattress, for new velcro shoes, and also wanted his toenails clipped. (Doc. 29, Ex, B at ID 136-37.) The investigation into the grievance found that he was given this "wheelchair . . . [because it] fit through the cell doors at this facility. The wheelchair is functional and meets your medical needs." (Doc. 29, Ex. B at ID 140.) Plaintiff had been scheduled to meet with a nurse regarding his new shoes (for a medical assessment of his needs) and a toenail clipping had also been scheduled. (*Id.*) Finally, as to the air mattress, Plaintiff was "advised to contact the officer in your unit. They will contact maintenance to determine if repair is possible. If it cannot be repaired, they will notify Health Care for replacement." (*Id.*)

I suggest that Plaintiff's allegations state a mere disagreement over the type of treatment he received, which fails to state a constitutional claim. *See Smith*, 102 F. App'x at 909; *Westlake*, 537 F.2d 857, 860, n.5 Here, the prison officials gave a rational explanation for replacing Plaintiff's old wheelchair with one that he found unsatisfactory, i.e., that the wheelchair of choice would not fit through the cell doors. I therefore suggest that this claim does not rise to the level of a viable constitutional claim. *Stewart v.*

*Gracik*, No.1:10-cv-698, 2011 WL 4559197, at \*13 (W.D. Mich. Aug. 26, 2011) (holding where plaintiff refused a wheelchair because he wanted a wheelchair with a different type of foot rest than the one provided, plaintiff alleged a mere disagreement over a medical course of treatment; thus, defendants were entitled to summary judgment). As to the air mattress, the prison officials told Plaintiff who to contact for repair or replacement. I therefore suggest that this claim fails to state a constitutional violation. *Maxwell v. Corr. Med. Servs.*, No. 1:10-CV-404, 2011WL 672075, at \*4 (W.D. Mich. Jan. 18, 2011) (granting summary judgment because disagreement over whether an air mattress was necessary "does not implicate the Eighth Amendment.").

Finally, Plaintiff's requests for Velcro shoes and to have his toe nails clipped had been addressed. Even if they had not, I further suggest that such claims fall short of a constitutional violation. *Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013) (finding summary judgment in favor of defendants appropriate where plaintiff alleged that he requested Velcro shoes but "provided no evidence that the defendants who denied the requests had any reason to believe the shoes were medically necessary."); *Garza v. Turley*, 490 F. App'x 83, 86 (10th Cir. 2012) (finding that "confiscation [of] his custom-made shoes and failing to provide him with an adequate replacement" did not rise to the level of a constitutional violation). I therefore suggest that Defendants' motion should be granted as to these claims.

### b.      *Threat that Plaintiff would be "sent up north"*

Plaintiff claims that defendants threatened to transfer him to a prison in the upper peninsula of Michigan if he did not withdraw his grievance. To state a claim for

11

retaliation under the First Amendment, a plaintiff must allege that (1) he engaged in protected conduct, (2) an adverse action was taken against him, and (3) there is a casual connection between the first two elements, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The adverse action must be one that would deter a person of ordinary firmness from the exercise of the right at stake, which here is the filing of grievances against prison officials. *Id.* at 396. Generally, a prison official's decision to transfer a prisoner from the general population of one prison to another is not considered adverse. *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). Here, Plaintiff has not alleged any unusual circumstances that would show that transfer to a prison in the upper peninsula was adverse. Therefore, he has failed to state a claim of retaliation. *Hermansen v. Ky Dep't. of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014) (finding that transfer to another prison does not qualify as an adverse action absent evidence that transferee prison is significantly more dangerous or that transfer would impair access to courts). I therefore suggest that Defendants' motion should be granted as to these claims.

### c.    *Plaintiff's motions*

Since I recommend that defendants' motion be granted and the case dismissed, I further recommend that Plaintiff's motions be denied.

### 3.    Conclusion

For all the reasons stated above, I recommend that defendants' motion to dismiss or for summary judgment (Doc. 29) be granted, that Plaintiff's motions for preliminary

injunction (Docs. 19, 33) and for appointment of counsel (Docs. 18, 34) be denied, and

Defendant Buskirk's motion to compel (Doc. 37) be denied.

I also recommend dismissing the claims against Defendants Buskirk and Brostoski. The claims stated against them are same as those lodged against the moving defendants; thus the claims should be dismissed for the same reasons, despite the fact that those defendants did not join in the motion. *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) ("While the district court did dismiss sua sponte some defendants who did not join in the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants."); *Eriline Co., S.A. v. Johnson*, 440 F.3d 648, 655, n.10 (4th Cir. 2006) ("Where a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it." (citing 5A Charles Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990))).

## III.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making

13

some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 9, 2015                               S/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A hard copy was also sent via First Class Mail to Marvin Belser #352904 at Marquette Branch Prison, 1960 U.S. Highway 41 South, Marquette, MI 49855.

Date: March 9, 2015                             By s/Kristen Krawczyk
                                                 Case Manager to Magistrate Judge Morris

14